951 A.2d 215 (2008)
401 N.J. Super. 383
John BUSTARD, et al., Appellant,
v.
BOARD OF REVIEW and Jersey Central Power & Light Company, Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted January 28, 2008.
Decided July 15, 2008.
*216 Cohen, Leder, Montalbano & Grossman, Kenilworth, for appellants John Bustard, et al. (David Grossman, on the brief).
Genova, Burns & Vernoia, Livingston, for respondent Jersey Central Power & Light Company (Francis J. Vernoia, of counsel and on the brief; Celia S. Bosco, on the brief).
Anne Milgram, Attorney General, for respondent Board of Review (Patrick DeAlmeida, Assistant Attorney General, of counsel; Ellen A. Reichart, Deputy Attorney General, on the brief).
Before Judges STERN, C.S. FISHER and KESTIN.
The opinion of the Court was delivered by
KESTIN, J.A.D. (retired and temporarily assigned on recall).
John Bustard is the first-named of some 891 claimants, all members of System Council U-3, International Brotherhood of Electrical Workers (union), employed by Jersey Central Power & Light Company (employer). Claimants appeal from a decision of the Board of Review (Board) holding them to be disqualified from unemployment compensation benefits for the period from December 8, 2004 through March 15, 2005. The Board left the question of claimants' potential liability for refund of benefits received to be determined administratively "in accordance with N.J.S.A. 43:21-16(d)."
To reach its decision, the Board reversed a contrary determination by the Appeal Tribunal. The Appeal Tribunal, in *217 turn, had reversed a determination by the Director's deputy that claimants were disqualified because they had engaged in a work stoppage.
Our review of the record discloses that the Board inadequately considered a focal issue in the matter, as framed by the parties and presented in the evidentiary record. Accordingly, we remand the matter for further consideration.
The events at issue began with a labor dispute. The collective bargaining agreement between the union and the employer, a public utility, had, by it terms, expired on October 31, 2004. The parties, however, twice acted to extend the term of the agreement through December 7, 2004. No further extension occurred and, beginning at 12:01 a.m. on December 8, 2004, claimants rendered no services to the employer until the labor dispute was resolved as of March 16, 2005. Following the cessation of work, claimants sought unemployment compensation benefits. As we have noted, the claims were administratively denied. The reason for that determination given by the Deputy on behalf of the Director was that, under the terms of N.J.S.A. 43:21-5(d), as it then read, claimants had been "involved in a stoppage of work caused by a labor dispute[,]" an unconditional disqualifying factor at the time if a finding was made, by application of the well-settled definition of the term, that a work stoppage had occurred.
Claimants appealed. On June 27, 2005, two days before the second day of the three-day hearing before the Appeal Tribunal, an amendment to N.J.S.A. 43:21-5(d) was enacted in L. 2005, c. 103, § 1, adding a new provision, an exception to the time-tested work-stoppage disqualification:
(2) For any claim for a period of unemployment commencing on or after December 1, 2004, no disqualification under this subsection (d) shall apply if it is shown that the individual has been prevented from working by the employer, even though:
(a) The individual's recognized or certified majority representative has directed the employees in the individual's collective bargaining unit to work under the preexisting terms and conditions of employment; and
(b) The employees had not engaged in a strike immediately before being prevented from working.
In § 2, the Legislature provided that the amendment was to "take effect on the 60th day after enactment."
Although the entire first day of the hearing had been devoted to eliciting evidence on questions dealing with the effect of the cessation of work upon the business and operations of the employer  the focal questions under the prior version of the statute and the cases decided thereunder  the second and third days of the hearing dealt extensively with the newly added focus of the amended statute: who, as between the union and the employer, bore the primary responsibility for the cessation of work, i.e., whether the employees had withheld their labor or whether the employer had refused to accept their services. Despite the extent to which the parties had concentrated on that issue, both at the hearing and in their written post-hearing submissions, the supervising appeals examiner presiding over the hearing before the Appeal Tribunal, gave it the shortest shrift possible when he disposed, in a single sentence in his decision dated February 3, 2006, of the issue that had consumed most of the last two days of the hearing:
In this matter, as the union did not direct the claimants to continue to work during the labor dispute, relief from disqualification under N.J.S.A. 43:21-5(d)(2) does not apply.
*218 And, the Board of Review, in its subsequent consideration of the matter, gave that issue scarcely more attention. In its decision of June 14, 2006, after reciting the provisions of the statute, the Board stated:
Recognizing that we tread on new ground, there being no previous case involving the recently amended labor dispute statute, we nevertheless conclude that its new provisions are not such as to allow these claimants to escape disqualification. The employer did not prevent the bargaining unit employees from working. On the contrary, it welcomed back the 74 who chose to return during the labor dispute. Moreover, the union did not instruct its members to work under the existing contract. The testimony was that the bargaining unit workers would only continue to work under a new ratified contract.
The issue presented by the parties was not as elemental as depicted by the decision makers. In the face of the new statutory provisions, the threshold issue to which the Board was required to give adequate consideration was whether the cessation of work resulted, actually or effectively, from the claimants' refusal to provide their services, a "strike"; or from the employer's refusal to accept those services, a "lockout".
We are, of course, obliged to accept as binding on appeal any finding of fact by an administrative agency that is supported by substantial evidence in the record, see Brady v. Board of Review, 152 N.J. 197, 210-11, 704 A.2d 547 (1997); Close v. Kordulak Bros., 44 N.J. 589, 598-99, 210 A.2d 753 (1965), as long as the agency's decision is free from any indicia of arbitrariness, caprice or unreason, and fairly advances legislative policies, see Brady, supra, 152 N.J. at 210, 704 A.2d 547; Campbell v. Department of Civil Service, 39 N.J. 556, 562, 189 A.2d 712 (1963). Nevertheless, where an agency decision bespeaks inadequate consideration of factual issues fairly distilled and presented by the parties for resolution, it is not entitled to deferential review. See Bailey v. Board of Review, 339 N.J.Super. 29, 32-33, 770 A.2d 1216 (App.Div.2001); cf. George Harms Constr. Co. v. Turnpike Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994) Texter v. Department of Human Servs., 88 N.J. 376, 382-83, 443 A.2d 178 (1982); Wilson v. Mountainside, 42 N.J. 426, 442, 201 A.2d 540 (1964).
The record in this matter provides ample support for the Board's determination that a work stoppage had occurred. There is sufficient basis in the evidence developed at the hearing for the factual findings undergirding that determination; and the conclusions that followed from the findings were logical and well-supported by the authorities cited. But, the Board's ultimate decision in the matter is wanting in sufficient basis regarding the newly enacted "no disqualification" legal standard contained in N.J.S.A. 43:21-5(d)(2).
The parties had expended considerable effort to demonstrate, one way or the other, from their respective points of view, who was responsible for the work stoppage, the union or the employer. About one-third of the entire transcript embodies the parties' development of this issue; and, as we have noted, they addressed the question further in their post-hearing submissions. The parties were entitled to a more evaluative and reflective consideration of their proofs in this regard than they received. The Board's stated determination, early in its decision:
After the employer refused the union's last offer for a contract, the claimants, who had previously authorized a strike, refused to return to work and commenced a strike against the employer *219 as of 12:01 a.m. on December 8, 2004[,]
was not based upon an adequate analysis of the evidentiary record and did not bring to bear the clearly stated criteria of newly-adopted N.J.S.A. 43:21-5(d)(2).
It was uncontested that, during their negotiations since the expiration of the collective bargaining agreement on October 31, 2004, the parties had effected two extensions of the agreement, bringing them to the evening of December 7, 2004. There was evidence that both the union and the employer took a position that further work by the claimants would not continue in the absence of a ratified new agreement, but there was also testimony from witnesses for both parties that claimants could offer their labor and the employer could accept their services on the basis of yet another extension of the prior agreement. Even so, it may be that neither the union's nor the employer's bargaining representatives suggested another extension even in the light of their past practices in that regard. Witnesses for both parties provided conflicting evidence on this question: on the one hand that an extension was possible and was discussed, and, on the other hand, that each party to the negotiations took a "no-contract/no-work" stance.
The parties' respective positions in their briefs on appeal serve to isolate the factual controversy the Board was required to resolve. Claimants' brief emphasizes
that the Union asked the Company whether they could work without a contract. The Union offered to continue to work without a contract after December 7, 2004. The Company's response was that employees could not work after December 7, 2004. The Company did not offer to allow the bargaining-unit employees to continue to work after December 7, 2004. The Company did not offer the Union to return to work after December 7, 2004[,] under the terms of the prior collective bargaining agreement.
[Citations to testimonial record omitted.]
The employer's brief emphasizes:
At [the] negotiating session [on December 7, 2004], the Union leadership presented the Company with an ultimatum: the Company either would have to accept the Union's last proposal or, alternatively, give the Union a last and best final offer. If that did not occur, its members would strike at midnight. The Union did not request another extension of the labor contract.
[Citations to testimonial record omitted.]
The Board did not resolve this factual dispute, as it was required to do by reason of the newly enacted terms of the statute. Given the new statutory exception to the disqualification standard, it was essential that the Board decide, on the basis of the evidence in the record, which of the parties was primarily responsible for the work stoppage, the union or the employer. The ambiguities in the evidence on this issue did not furnish an excuse for sidestepping the question. If the proofs, as presented, provided an insufficient basis for making the necessary findings of fact on this critical issue, and there was no other basis for deciding the factual issue consonant with the newly enacted statutory standard, the Board was empowered to order further hearings to clarify matters in that connection.
Obviously, there could be no case law that would assist the Board in making that determination. The statute was so new that this was apparently the first time such a decision had been necessary. And, given the recent enactment, venerable cases such as Gerber v. Board of Review, 20 N.J. 561, 120 A.2d 436 (1956); *220 Ablondi v. Board of Review, 8 N.J.Super. 71, 73 A.2d 262 (App.Div.1950); see also Mortensen v. Board of Review, 21 N.J. 242, 121 A.2d 539 (1956), were of limited value in resolving the newly critical issue, as were decisions of the Board and prior regulations adopted to govern the field that pre-dated the 2005 statutory amendment. The recent enactment clearly contains a lately developed exception to the classical labor-dispute-disqualification standard. There was no legitimate basis for the Board to omit engaging in a reflective evaluation of the evidence produced and deciding the critical issue as a question of first impression.
In addition to the need for the Board to make reflective findings on every focal issue of fact, it is important that its insights be articulated on the interpretation of any new statutory standard, as well as the application of that standard to the facts as found. Where a dispute arises over the meaning and application of a newly enacted statute in a subject matter area committed to administrative agency regulation, there is a need for the agency to bring its subject matter expertise and policy orientations to bear on the legal issues as well as on the facts involved. Although we are "[not] bound by an agency's interpretation of a statute or its determination of a strictly legal issue[,]" Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973), the agency's views are entitled to substantial deference because of its duty to administer the subject matter agreeably with the legislative design. See Merin v. Maglaki, 126 N.J. 430, 436-37, 599 A.2d 1256 (1992); Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984).
In this matter, an interpretation and application of the newly enacted amendment will doubtless turn both on pure evaluations of fact and on questions impacted by policy determinations in respect of which the agency's expertise may be critical. Among the questions to be addressed in resolving the factual issue are: what actually occurred; who said what to whom; whose conduct was essentially responsible for the employees being out of work for the ninety-seven-day period? The policy inquiry involves questions such as: what was the legislative intent in enacting the new provisions; did the past practices between the parties regarding extensions of the collective bargaining agreement have any bearing on the outcome here; in the circumstances, on which party, the union or the employer, does the initial burden of broaching the subject of another extension lie; what default rule should apply where the proofs are in equipoise? We do not intend these recitations to be exclusive; other pertinent questions may also exist. We have endeavored only to provide examples of the kinds of inquiries that should characterize any effort to resolve the issue in a balanced and reflective fashion. We defer to the Board to make the first instance determination of what the amendment was designed to achieve and how that design informs the result to be reached here.
For the foregoing reasons, we remand the matter for further consideration by the Board of Review. We leave to the Board a determination whether the issue to be addressed can be resolved by further study and application of the existing record, or whether additional hearings should be held to develop the facts further and, if so, whether the hearings should be held directly by the Board or delegated to another body such as the Appeal Tribunal.
We affirm the portion of the Board's June 14, 2006 decision embodying a finding that a work stoppage had occurred. We vacate the Board's disposition of the matter, however, and remand for further consideration *221 in accordance with the standards now contained in N.J.S.A. 43:21-5(d)(2).
Affirmed in part; reversed in part and remanded.